UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELORIS A. FLEMING,

    Plaintiff,

v.                                                      Case No:   8:15-cv-1517-T-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Deloris A. Fleming's Complaint (Doc. 1) filed on June 26, 2015. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    I.    **Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

        **A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On February 4, 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income asserting an onset date of April 1, 2008.  (Tr. at 156, 163).  Plaintiff's applications were denied initially on June 15, 2010, and on reconsideration on October 22, 2010.  (Tr. at 78-81).  A hearing was held before Administrative Law Judge ("ALJ") Arline Colon on March 21, 2012.  (Tr. at 38-77).  ALJ Colon issued an unfavorable decision on May 17, 2012.  (Tr. at 18-37).  On November 30, 2012, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-4).

Plaintiff then filed a Complaint before this Court in Case No. 8:13-cv-00318-EAK-TBM on February 1, 2013.  On February 4, 2014, the Honorable Thomas B. McCoun, III, United States Magistrate Judge, entered a Report and Recommendation recommending that the case be reversed and remanded.  (Tr. at 950-60).  On February 21, 2014, the Honorable Elizabeth A. Kovachevich, United States District Judge, entered an Order adopting the Report and Recommendation.  (Tr. at 961-63).  The Court reversed the decision of the Commissioner denying Plaintiff's claims for a period of disability and remanded the case for further proceedings.  (Tr. at 962).

On remand, the Appeals Council noted that Plaintiff had filed a subsequent application for disability insurance benefits and supplemental security income on February 4 and 5, 2013.  (Tr. at 968).  The Appeals Council stated that on July 15, 2013, "the State agency personnel determined that the claimant was disabled beginning on March 14, 2013."  (Tr. at 968).  The Appeals Council affirmed the favorable determination.  (Tr. at 968).  However, for the period

prior to March 14, 2013, the Appeals Council vacated the final decision of the Commissioner of Social Security and remanded this case for further proceedings consistent with the order of the District Court. (Tr. at 968). The Appeals Council ordered the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision on the issue of disability before March 14, 2013." (Tr. at 968).

On November 4, 2014, ALJ Colon conducted an additional hearing. (Tr. at 825-74). On April 2, 2015, ALJ Colon issued an unfavorable decision. (Tr. at 800-24). The ALJ found Plaintiff not to be under a disability from June 12, 2009 through March 13, 2013. (Tr. at 815). No exceptions were filed to the ALJ's decision, and the Appeals Council did not review the decision. (Doc. 21 at 2; Doc. 22 at 2).

Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 26, 2015. Defendant filed an Answer (Doc. 12) on September 29, 2015. Both parties filed memoranda in support of their positions. (Docs. 21, 22). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 16). This case is now ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can perform other work of the sort found in the national economy. *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

In this case, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013. (Tr. at 805). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2009, the amended alleged onset date. (Tr. at 805).[2] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity; disorders of the spine; asthma; diabetes with possible neurological manifestations; asthma; osteoarthritis and left knee meniscus tear and chondromalacia. (Tr. at 805). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. at 808). The ALJ specifically stated that she considered listings l.04 and 9.08 in making that determination. (Tr. at 808).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk 4 hours in an 8-hour day and sit 6 hours in an 8-hour day; she can occasionally stoop, balance, kneel, crouch and crawl; she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs; she should avoid concentrated exposure to hazards such as moving mechanical parts of equipment and machinery, avoid

---

[2] At the initial hearing, Plaintiff, via her representative, amended her alleged onset date to June 12, 2009. (Tr. at 803).

concentrated exposure to vibration, concentrated exposure to fumes, odors, dust, gasses and poor ventilation; she can only frequently reach overhead.

(Tr. at 808).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a as a cashier, store manager, "phlemobotomist [sic]," and certified nurse's assistant. (Tr. at 814). The ALJ stated that the vocational expert ("VE") "testified that someone with the claimant's residual functional capacity could not have performed any of this past work." (Tr. at 814). The ALJ did note, however, that the VE found that Plaintiff could have performed the job of suit attendant (DOT 358.677-014; a job with a light exertional level and an SVP of 2). (Tr. at 814).[3] Nevertheless, because it was unclear if Plaintiff had performed the job at substantial gainful activity level, it was not considered past work. (Tr. at 814).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 814). Specifically, the ALJ noted that the VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as:

1. office helper (DOT 239.567-010; a job with a light exertional level and an SVP of 2; 207,000 such jobs available in the national economy and 10,400 in the state);

2. office mail clerk (DOT 209.687-026; a job with a light exertional level and an SVP of 2; 122,000 such jobs available in the state and 3,100 in the state); and

3. storage facility rental clerk (DOT 295.367-026; a job with a light exertional level and an SVP of 2; 43,000 such jobs available in the national economy and 2,900 in the state).

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*. "SVP" refers to the term specific vocational preparation.

(Tr. at 815). The ALJ found the VE's testimony to be consistent with the information contained in the *Dictionary of Occupational Titles*, except as to the testimony regarding the stand and walk limitations, which was based on the VE's professional experience. (Tr. at 815). Based on the testimony of the VE, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. at 815). Thus, the ALJ determined that a finding of "not disabled" was appropriate. (Tr. at 815). The ALJ found Plaintiff not to have been under a disability from June 12, 2009 through March 13, 2013. (Tr. at 816).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff argues four issues on appeal:

1. The ALJ erred in the consideration of Ms. Fleming's medically determinable impairment of pseudo-stroke and erred in not properly considering it when assessing Ms. Fleming's symptoms and credibility.

2. The ALJ erred in assessing Ms. Fleming's statements regarding the nursing homes and thereby did not properly consider them when assessing Ms. Fleming's credibility.

3. The ALJ erred in assessing Ms. Fleming's credibility by failing to assess the regulatory factors.

4. The ALJ erred in assessing the severity of Ms. Fleming's back injury.

(Doc. 21 at 11-23).

### A. The ALJ's Credibility Determination of Plaintiff

The first three issues raised by Plaintiff concern the ALJ's credibility assessment of Plaintiff. The Court addresses the issues regarding Plaintiff's credibility below.

#### i. Legal Standard

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be

reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, in reviewing credibility, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x. at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

### ii. Ms. Fleming's Pseudo-Stroke

The Court first addresses Plaintiff's arguments regarding her pseudo-stroke.

#### 1. The Parties' Arguments

Plaintiff contends that the ALJ erred in the consideration of Ms. Fleming's medically determinable impairment of pseudo-stroke and erred in not properly considering it when assessing Ms. Fleming's symptoms and credibility. (Doc. 21 at 12). Specifically, Plaintiff argues that the ALJ treated her statements about her limitations with "great suspicion" because

"her allegations of a stroke were determined by her physicians to not be a true stroke but was a pseudo stroke." (*Id.* (citing Tr. at 811-12)). Plaintiff argues that "[t]his characterization is based on an apparent significant ignorance of the nature of a pseudo-stroke, causing an improper and false conclusion about Ms. Fleming and her credibility." (*Id.*).

Plaintiff argues that the only medical evidence in this case regarding Plaintiff's pseudo-stroke comes from Dr. Vasquez and Dr. Cohen. (*Id.* at 14). Plaintiff states that on July 15, 2010, Dr. Vasquez, a hospital neurologist, concluded that Plaintiff's symptoms "were not a true stroke nor true dysarthria (a neurological disorder causing difficulty in speech), but were more likely a conversion disorder." (*Id.* at 12 (citing Tr. at 564-66). Additionally, Plaintiff states that on September 22, 2010, Dr. Cohen, another hospital neurologist, "concluded that her symptoms were those of a pseudo-stroke, which he described as a somatization disorder likely brought on by stress, and was probably similar to her previous episodes." (*Id.* (citing Tr. at 619)).

Citing the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association, Plaintiff states that a "conversion disorder is presumed to be the expression of an underlying psychological conflict or need" and that "[c]onversion symptoms are presumed to result from an unconscious process." (*Id.* at 13). Further, Plaintiff states that a "[s]omatization disorder is a psychiatric condition marked by multiple medically unexplained physical, or somatic, symptoms." (*Id.*). Plaintiff argues that both doctors determined that Plaintiff's "stroke" was a conversion reaction and/or a somatization disorder. (*Id.* at 14). In doing so, Plaintiff contends that "both physicians determined that her pseudo-stroke was not a factitious disorder nor was it malingering." (*Id.* at 14-15). Rather, Plaintiff argues that "[i]t was not something over which she had control." (*Id.* at 15).

Defendant disagrees, arguing that substantial evidence supports the ALJ's credibility determination. (Doc. 22 at 4). Defendant argues that the ALJ properly found that "Plaintiff's allegations were not entirely credible because she exaggerated her symptoms or misstated her medical history to the ALJ." (*Id.* at 8 (citing Tr. at 811-13)). Defendant states that while "Plaintiff argues that the ALJ's focus on the diagnosis was improper, because the somatization disorder or conversion disorder could have caused the symptoms she alleged," "diagnostic testing did not corroborate Plaintiff's allegations of right-sided weakness." (*Id.* at 9 (citing Tr. at 811)). Defendant points to a September 2010 motor exam and stated that it "revealed normal tone, bulk and strength in the lower extremities." (*Id.* (citing Tr. at 618)). Defendant argues that the exam showed that Plaintiff "was able to use her right hand to feed herself and use the phone." (*Id.* (citing Tr. at 619)). Defendant notes that Plaintiff "exhibited normal strength and sensation in December 2010 and March 2011." (*Id.* (citing Tr. at 662, 670)). Further, Defendant states that in February 2012, Plaintiff "exhibited normal sensation and only a slight decrease in strength in her right upper and lower extremities." (*Id.* at 9-10 (citing Tr. at 733)). Additionally, Defendant argues that by January and February 2013, Plaintiff's "strength and sensation were normal again." (*Id.* at 10 (citing Tr. at 1147, 1150)). Finally, Defendant states that "Plaintiff testified that she never received treatment for her right-sided weakness." (*Id.* (citing Tr. at 843)).

### 2. Relevant Case Law

Plaintiff argues that the ALJ's characterization of Plaintiff's pseudo-strokes "is based on an apparent significant ignorance of the nature of a pseudo-stroke, causing an improper and false conclusion about Ms. Fleming and her credibility." (*Id.* at 13). Plaintiff cites *Bright-Jacobs v. Barnhart*, 386 F. Supp. 2d 1295, 1333 (N.D. Ga. 2004) in support. (*Id.* at 14). In *Bright-Jacobs*, the Court reversed and remanded the case, finding "that the ALJ failed to properly evaluate the

10

claimant's credibility." *Id.* The ALJ found that "the claimant's testimony regarding the pain and limitations was not fully credible." *Id.* The Court agreed with that finding, stating that "the claimant's testimony as to her medical conditions generally contradicts the objective medical evidence as determined by her treating physicians." *Id.* Because the claimant's testimony contradicted the objective medical evidence, the Court stated that "in the abstract, an ALJ could find that her testimony is not credible." *Id.* Nevertheless, the Court stated that this result "is precisely the nature of her disabling somatization disorder: the claimant *actually believes* that she is suffering from disabling medical conditions even though such medical conditions are illusory or less severe." *Id.* (emphasis added). The Court stated that "in order to properly evaluate the claimant's credibility, the ALJ must determine *whether the claimant actually believes she suffers from the enumerated severe disabling medical conditions*." *Id.* (emphasis added). Thus, because the ALJ failed to ascertain "whether the alleged medical problems were real to the claimant," the Court held that the ALJ committed reversible error by failing to properly evaluate the claimant's credibility. *Id.*

In addition to the case cited by Plaintiff, similar reasoning was utilized by the Court in *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) (Posner, J.). In *Carradine*, the Seventh Circuit reversed and remanded the case finding that the ALJ improperly "based his credibility determination on serious errors in reasoning rather than merely the demeanor of the witness." *Id.* at 754. There, the ALJ believed that the claimant was exaggerating her pain. *Id.* Further, the ALJ stated that psychological testing confirmed a finding that the claimant was inclined to exaggerate her account of limitations. *Id.* Nevertheless, the Court noted that testing indicated that "psychological stress and personal conflicts likely affected the claimant's account of physical symptoms and ailments." *Id.* Specifically, the Court stated that testing "did not indicate

invalid responses or exaggeration of psychological symptoms," rather, the test results indicated somatization. *Id.* While the ALJ found that the results implied the claimant "exaggerates the severity of symptoms she reports," the Court found that they implied "no such thing." *Id.* Instead, the Court stated that the test results implied that the source of the claimant's pain was psychological rather than physical. *Id.* The Court stated that "[i]f pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits." *Id.* The Court noted:

> Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question whether the applicant is pretending to experience pain, or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction. The administrative law judge in our case did not.

*Id.* at 754-55.

The Court continued, stating that the ALJ's misunderstanding was further shown by his remark that the "medical examiners and treating physicians have not been able to find *objective evidence* to support [the claimant's] extreme account of pain and limitation." *Id.* at 755 (emphasis added). The Court stated that this "inability is consistent of course with a psychological origin of the pain." *Id.* The Court stated that the ALJ "could not get beyond the discrepancy between [the claimant's] purely physical ailments, which although severe were not a plausible cause of disabling pain, and the pain to which [the claimant] testified." *Id.* The Court found that the ALJ "failed to take seriously the possibility that the pain was indeed as severe as [the claimant] said but that its origin was psychological rather than physical." *Id.* The Court stated that the evidence the claimant presented "went far beyond a merely self-serving, uncorroborated claim of pain by a malingerer." *Id.*

12

Nevertheless, the Court specifically stated that it was not deciding that the claimant was entitled to benefits. *Id.* at 756. In fact, the Court acknowledged that the claimant may have been exaggerating her pain. *Id.* at 756. Yet, the Court stated that "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws, even if those flaws might be dissipated by a fuller and more exact engagement with the facts." *Id.* (internal citations omitted).

A third illustrative case is *Tedford v. Colvin*, No. C12-4076-LTS, 2013 WL 3338477, at *16 (N.D. Iowa July 2, 2013). There, the Court reversed and remanded the case, finding that the ALJ "failed to consider the impact of somatization disorder when assessing [the claimant's] credibility and her RFC." *Id.* The Court noted that "[a]lthough the ALJ expressly found that [the claimant's] allegations were not credible," the ALJ's primary reasons for discrediting [the claimant] – exaggeration of symptoms and lack of objective medical evidence supporting symptoms – "are indicative of the mental impairment itself." *Id.* The Court stated that "[t]his is troubling because the ALJ recognized that [the claimant] had pseudoseizures and her symptoms were 'probably psychogenic,'" but still used the psychological nature of the claimant's symptoms as a basis to discredit her." *Id.* The Court found that the ALJ "did not adequately consider [the claimant's] mental impairment." *Id.* Thus, the Court held that "[e]xaggeration of symptoms and lack of objective medical evidence supporting physical symptoms are not good reasons for discrediting a claimant diagnosed with somatization disorder." *Id.*

### 3. Analysis

The Mayo Clinic defines conversion disorder as "a condition in which you show psychological stress in physical ways." Mayo Clinic, Conversion disorder, Definition, *available at* http://www.mayoclinic.org/diseases-conditions/conversion-disorder/basics/definition/con-

20029533 (last visited August 29, 2016). Further, the Mayo Clinic states that "[t]he condition was so named to describe a health problem that starts as a mental or emotional crisis – a scary or stressful incident of some kind – and converts to a physical problem." *Id.* The Mayo Clinic states that "[c]onversion disorder signs and symptoms appear with no underlying physical cause, *and you can't control them.*" *Id.* (emphasis added). Similarly, the Mayo Clinic states that somatic symptom disorder "involves having a significant focus on physical symptoms – such as pain or fatigue – to the point that it causes major emotional distress and problems functioning." Mayo Clinic, Somatic symptom disorder, Definition, *available at* http://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/basics/definition/con-20124065 (last visited August 29, 2016).

In this case, Plaintiff contends that the doctors "determined that her pseudo-stroke was not a factitious disorder nor was it malingering" and that "[i]t was not something over which she had control." (Doc. 21 at 14-15). In fact, the record appears to demonstrate that Plaintiff actually believed that she had strokes and resulting symptoms from them such as poor memory and right-side weakness. For instance, at the first hearing, Plaintiff stated on multiple occasions that she had a short memory after her "stroke." (Tr. at 888, 903). In addition to her complaints of memory problems, Plaintiff stated at the hearing that her last stroke "was very bad to me on my right side." (Tr. at 903). Plaintiff testified that she could not put on her clothes. (Tr. at 903). Additionally, at the second hearing, when responding to questioning about why she did not have back surgery sooner, Plaintiff blamed her stroke. (Tr. at 837). Furthermore, Plaintiff repeated her complaints of right-side weakness, (Tr. at 839), and stated that her memory was "awful" after her stroke (Tr. at 853).

Nevertheless, while Plaintiff stated that she had strokes and symptoms from them, the medical evidence contradicts that testimony. As the ALJ stated, the medical evidence demonstrates that Plaintiff did not have a stroke. (Tr. at 811). The ALJ cited a CT scan taken in July of 2010 that revealed nothing unusual, with "no evidence of old strokes." (Tr. at 811 (citing Tr. at 564)).

Further, the medical evidence contradicts Plaintiff's reports of right-side weakness. As discussed by the ALJ, Dr. Vasquez noted that Plaintiff alleged that she could not use her right arm or right leg, but when stimulated with slight pain, Plaintiff withdrew "quite well." (Tr. at 811 (citing Tr. at 565)). Moreover, as stated by the ALJ, Dr. Vasquez noted Plaintiff "was able to use her right arm, that it did not fall without any controlled movement, and that when asked to move her left leg she was able to use her right leg in the process, while pretending that she could not move her right leg when specifically asked to move her right leg." (Tr. at 811 (citing Tr. at 565)).

The ALJ further cited a September 2010 CT scan that revealed no acute intracranial abnormality. (Tr. at 811 (citing Tr. at 615)). At that time, Plaintiff presented with right-sided weakness. (Tr. at 615). As the ALJ stated, Dr. Cohen expressed skepticism of Plaintiff's "stroke." (Tr. at 811 (citing Tr. at 618)). The ALJ noted that Dr. Cohen "found the claimant's effort was extremely poor in using her right leg—despite the motor examination revealing normal strength in all her extremities." (Tr. at 811 (citing Tr. at 618)). Additionally, as discussed by the ALJ, Dr. Cohen noted that Plaintiff "was able to briefly lift her leg off the bed and that she had resistance to passive movement." (Tr. at 811 (citing Tr. at 618)). The ALJ stated that Dr. Cohen further "noted the claimant also was able to use her right hand, despite her

apparent attempts to make it appear that she could not" and that Plaintiff "was seen by the nurses using the telephone and feeding herself with her right hand." (Tr. at 811 (citing Tr. at 618)).

Nonetheless, as the ALJ acknowledged, Dr. Vasquez noted Plaintiff "was very worried about her financial situation." (Tr. at 811 (citing Tr. at 565)). In fact, as pointed out by Plaintiff, the record shows that Dr. Vasquez believed Plaintiff that could have a *conversion disorder*. (Tr. at 565) (emphasis added). Additionally, the ALJ further acknowledged Dr. Cohen's diagnosis of pseudo-stroke. (Tr. at 811 (citing Tr. at 619)). Dr. Cohen concluded that the pseudo-stroke was "a *somatization disorder* brought on by the extreme stress that she is under." (Tr. at 619) (emphasis added). Dr. Cohen further stated that he

> had a frank discussion with the patient and told her that due to the stress her central nervous system including the brain was not able to function up to 100% and therefore there was difficulty controlling her body and this was being made worse not only by the past stress but the anxiety she was experiencing.

(Tr. at 619). Furthermore, a history of conversion disorder is noted at other places in the medical history. (Tr. at 723, 725, 731, 732, 738).

In this case, the medical evidence of record clearly contradicts Plaintiff's testimony regarding her stokes and alleged symptoms from them. Nevertheless, her testimony appears to show that she *actually believed* that she had strokes and resulting symptoms from those strokes. As the cases cited above demonstrate, these are exactly the circumstances that would be expected from someone with a conversion and/or somatization disorder. *See Carradine*, 360 F.3d at 754; *Bright-Jacobs*, 386 F. Supp. 2d at 1333; *Tedford*, 2013 WL 3338477, at *16. As such, this case appears to be analogous to the cases cited above.

For instance, in *Bright-Jacobs*, the Court stated that the very nature of the claimant's somatization disorder means that "the claimant actually believes that she is suffering from disabling medical conditions even though such medical conditions are illusory or less severe."

16

386 F. Supp. 2d at 1333. Similarly, in *Carradine*, the Court stated that the claimant's test results – showing somatization – implied that the source of the claimant's pain was psychological rather than physical. 360 F.3d at 754. Further, in *Tedford*, the Court stated that the claimant's exaggeration of symptoms and lack of objective medical evidence supporting symptoms are indicative of somatization disorder. 2013 WL 3338477, at *16.

In all three cases, the Court reversed and remanded the decision of the ALJ. *See Carradine*, 360 F.3d at 754; *Bright-Jacobs*, 386 F. Supp. 2d at 1333; *Tedford*, 2013 WL 3338477, at *16. Here, as in the cases above, the Court cannot conclude that the ALJ's credibility determination is based on substantial evidence when it is unclear whether or not she considered the possible effects of Plaintiff's conversion and/or somatization disorders. *See Bright-Jacobs*, 386 F. Supp. 2d at 1333; *Tedford*, 2013 WL 3338477, at *16. In this case, the diagnoses by Dr. Vasquez and Dr. Cohen of a conversion and/or somatization disorder go far beyond a mere self-serving, uncorroborated claim by a malingerer. *See Carradine*, 360 F.3d at 754. Thus, in order to properly evaluate Plaintiff's credibility, the ALJ must determine whether Plaintiff actually believes she suffers from her allegedly severe disabling medical conditions. *See Bright-Jacobs*, 386 F. Supp. 2d at 1333. Accordingly, because the ALJ failed to ascertain whether the alleged medical problems were real to Plaintiff, the Court finds that the ALJ committed reversible error by failing to properly evaluate Plaintiff's credibility. *See id.* On remand, the Commissioner is directed to further evaluate Plaintiff's alleged conversion and/or somatization disorders as it relates to Plaintiff's credibility and her RFC assessment, including any additional psychological or medical examinations that may be necessary to complete the administrative record.

The Court notes, however, that it is not deciding that Plaintiff is entitled to benefits.  *See Carradine*, 360 F.3d at 754.  As in *Carradine*, the possibility certainly exists that Plaintiff is exaggerating her symptoms.  *See id.* at 756.  Nonetheless, under these circumstances presented here, the ALJ's decision cannot be upheld without an evaluation of Plaintiff's alleged conversion and/or somatization disorder(s), even if that evaluation with its fuller and more exact engagement of the facts leads to the same conclusion—*i.e.*, that Plaintiff is not credible.  *See id.*

### iii. Plaintiff's Stay in Nursing Homes and the ALJ's Consideration of the Regulatory Factors

Because the Court has found that the ALJ improperly discounted Plaintiff's credibility, on remand, the Court directs the Commissioner to fully re-evaluate Plaintiff's credibility and RFC assessment, including Plaintiff's testimony, arguments, and other evidence regarding her stay in nursing homes.  Additionally, on remand, the Commissioner is directed to fully consider the appropriate regulatory factors in determining Plaintiff's credibility.

## III. Plaintiff's Back Injury

Because the Court has found that, upon remand, the Commissioner must fully re-evaluate Plaintiff's credibility and RFC assessment, and because that evidence may impact the Court's analysis of other elements of the Commissioner's decision, the Court finds that any ruling on Plaintiff's remaining arguments regarding the severity of her back injury would be premature at this time.

## IV. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Plaintiff's credibility and RFC assessment, including Plaintiff's alleged conversion and/or somatization disorders.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 15, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties